Case number three 20 0 1 6 4 Adam home at all. Appellants versus Peter Kodak at all. Appalachia. Mr. Pollard, are you ready? I am. We are. Thank you. Uh, good afternoon, counselor, your honors. May it please the court. Uh, my name is Zach Pollack and I represent the homes claim subpoenas in this case. This case involves a dispute between the homes and a group of defendants regarding the home's ability to kayak over a portion of the Mazon river located on defendant's property. The trial court granted defendants summary judgment motion, and they applied the common law rule to deny the home was the right to kayak over defendants land. We're asking is this court to reverse the trial court's decision and apply the civil law rule to allow the homes to briefly kayak over defendant's property. The civil law rule provides a riparian owners on a natural body of water, have the right to reasonable use and enjoyment of the entire surface of the body of the water, we believe applying the civil law rule in this case has three benefits. First, it allows the homes to continue to collect fossils from their landlocked property by briefly traversing over the Mazon river located on defendant's to access their public exit point. Two, it provides the protection for defendant's property rights by requiring homes to do only do so in a reasonable limited manner. Finally, it provides a simple solution that promotes the mutually beneficial use of the Mazon river, which is an important natural resource. Now applying the civil law rule to the Mazon in this case will not grant the homes to do anything other than briefly float over the water above defendant's property does not allow the homes to remove any resources from defendant's property either briefly, the facts of this case, uh, the homes on two properties on the Mazon river, they're upstream of defendants and the Mazon runs from south to north. So it's a bit confusing if you look at a map, but the lower property, the homes own is landlocked. So what the homes do is they put their kayaks in at the access property. They float downstream to the landlocked property, which has all these really neat fossils and they collect the fossils. They put them into the kayak, but they have no way to get back upstream because the kayaks are so heavy with fossils. So what they do is they float downstream to a public access point where they pull their kayak out. However, to get to that point, they have to pass over the Mazon river, which runs over defendant's properties. Tell me about that public access point. Um, it's, I believe it's just a land underneath a viaduct of a bridge. So the public owns property on both sides of the bridge. They have the right away. And are you saying that this is a private waterway or private body of water? So the Mazon is a non navigable waterway based on the fact of it being a non navigable waterway, uh, riparian rights apply. There's no general public right to use any part of the Mazon to navigate. Um, the, No, you're, you would say that only riparian owners along the 28 mile Mazon Creek, which is what it's called by the DNR. Is it not? Yes. Okay. Cause they classify it. Correct. And 28 miles in length. Right. Okay. It has a source somewhere, uh, to the South. Correct. And flows into the near Morris to the Illinois river. Right. Okay. So it's a tributary of the Illinois river. And you're saying that anyone who goes on the state right away at this viaduct and puts a kayak on that water is in violation of the riparian owner's rights all the way that they're paddling on that body of water. Correct. That's riparian rights law is very restrictive to public use of that waterway. Basically there's no right for any public user to navigate the Mazon river in any way. So unless, unless they have the permission of the landowners, well, I thought you used, I thought you used the term public access at the moment. Correct. So the homes, they only take their, their kayaks out at the public access point. There were, but why is it a public access? Public access point is, is probably not the right term. It's public land that they're taking their boats out on. I'm not, I'm not access point is wrong. The public is not accessing the Mazon river at that point. Okay. So basically what we're asking is this is a case of first impression. Okay. Why is it a case of first impression? So the Mazon being a non-navigable river, it's controlled by riparian rights. The rights of riparian owners have been developed by the common law over the years. The typical case dealing with the relationship between two riparian owners on the same body of water has to do typically with consumptive uses of water. It's, can you build a dam? Can you take enough water to feed your livestock? Stuff like that. There's really not a whole lot of water. Why don't we cut to the chase of that and talk about Beecham. Okay. I was getting there eventually. So that's all this case is about is where the riparian right owner, which is your clients and your opposition's clients have the right to use the body of water apart from their adjacent property. Correct. Isn't that the issue here? That is the issue. Okay. So let's deal with the issue. Okay. So in Beecham that was dealing with a lake and Beecham applied the civil law rule and the civil law rule does allow everyone to use the water. The common law rule says you can only use the water above the land you own. So in Beecham, the court analyzed everything and they applied the civil law rule because they found that that promotes the recreational use of the lakes and full enjoyment of the property by all the owners. Um, it also noted that if you do apply the common law rule, you could potentially have fences and booms set up all over the lake, but for people trying to exclude the other owners from the specific piece of water over their land, um, it also talks about how in lakes, it's really hard to establish property lines just because it's not a linear body. So it didn't apply the common law rule because it decided that it restricted the use so much that it really didn't serve the purpose of everyone enjoying the lake to get together. Um, and I realized that a lake and a river are different, um, a river. You can, you can clearly delineate boundaries. It wouldn't be that hard just cause you've got a linear piece of water in most cases. But I think the reasoning in Beecham still applies to a river because you do have a limited amount of owners, riparian owners on that body of water. Well, it's actually a Creek. Creek Creek river. I think it applies to anything you put a kayak in honestly. Um, and it really has the same kind of benefit if you apply the civil law rule, because it allows every riparian owner on that river to use it in a reasonable manner. Um, what about navigable versus non navigable? A lake is non navigable. Normally. Correct. And in this case, most rivers and creeks in Illinois are non navigable. In this case, the Mazon is non navigable. Um, but if you do apply the civil law, everyone on a limited basis would get to use the Mazon river if their riparian owner, um, it creates a narrow class of users, you can only go over the surface waters, only riparian owners and their licensees can do so, and only can do so in a reasonable way, it doesn't create a right of access to the Mazon for the public. Uh, it doesn't allow a riparian owner to remove anything from another riparian owner's riverbed. Um, and really the burden on the landowners is kind of just having to watch the kayaks go by. Um, it's really not a huge burden. Also, how many riparian owners are there in the 28 miles of the Mazon river? That I do not know. Unfortunately, I do not know. Um, let's say there's a hundred. It could be a hundred people can go by daily on a kayak. So it doesn't necessarily mean that because applying the civil law rule only allows you to enter the creek off of your property. It doesn't allow you to kayak 10 miles down and then lift your kayak off on someone else's property, unless you have that person's permission. So you really have a limited access and entry and an access point and an exit point. So while yes, your argument is every time they come to a bridge or a culvert, as long as that's publicly maintained property, they can get in and out there. Sure. I do think because it's public and because there are non-riparian owners to that wouldn't be exercising their right to exclude you. I think that would be reasonable. So how far can they paddle up and down the Mazon creek? The people who get on, uh, step off on the right away, walk down some, the right away, the state goes, you know, each side of the bridge, so to speak, I'm imagining the bridge. Right. Like on route 47, Illinois 47. Okay. Where it crosses. And I guess it depends on how they do it. Because they're public, have no riparian rights. Do they just stay in that little pool of water, uh, under the bridge? No, I don't even think they could do that without the P without public permission, because technically, I guess if it is owned by let's say Grundy County or the state, they would have to give those individuals permission to access that water. Well, I don't think they own anything. I think they probably got a right away unless they, you know, so it's just a right away, I don't know that they'd even have permission to do that. Riparian rights attached to that. That is probably correct, depending on what the deed show. Right. Um, so, so we think that no, so no one except riparian, except owners of property, uh, would have any rights beyond that body of water? Yes. Okay. So that, okay. Yes. Um, and those rights wouldn't be limited to kayaking though, correct? I mean, if they want to get a jet ski out, zip up and down or. So in this case, I'm saying kayaking presumably, and the civil law rule does have a reasonability, reasonableness component. So again, how it's used, we're using kayaking cause that's a specific, specific use in this case. And we would argue that kayaking is reasonable. I've been on jet skis before. They're very loud and obnoxious. So I think you might have a good argument that cruising up and down a river right next to people's houses on a jet ski would not be reasonable. Um, but again, that, that w there is a place in the civil law to make that determination. Now, vice versa, if you do apply the common law rule to the Mazan, really, it severely limits the ability of individuals on that body of water to really do anything in the water because you're limited to essentially what's in front of your property, and if someone owns the land on the other side of the body of water, you really only get a halfway out because technically you only own to the midpoint of that stream. So the common law really restricts the use. And again, if you do apply the common law, you could have people putting up fences all across the river if they own both sides, or if they have the agreement of the person on the other side. What would be the problem with that? I mean, the land surveyed, they own to the middle of the Creek. That's true. The access under common laws for consumptive purposes. Right. And I guess if you believe the common law is the right way to go, then you really don't think that the fences are a problem because they've got the right to exclude. So, um, so what, what would be the problem with that? Well, I guess it's a natural consequence of approving the common law rule. So there's not a problem. Okay. So why isn't the common law, the better rule to follow on a non-navigable stream Creek? Well, cause we believe if you apply the common law rule, it essentially eliminates a lot of the use of that for recreational purposes. Oh, so now we're back to recreation as a purpose. Right. Or kayaking, which is a recreational purpose. I do use the term interchangeably in my brief. Um, but I do think that really, but I guess what I'm saying is that under the common law, you own to the middle of the, of the bed and you have as a repairing right, the right to use the body of water. Okay. That's defined by your boundary, right. I mean, and not everybody wants the con if it's not a public place and it's private, you can kayak on your little body of water in front of your place. Right. That's true. Are there landowners along the 28 mile stretch of the Mazon Creek that own property on both sides such that they could erect fences maybe for purposes of watering livestock? I believe so. I'm not sure Mr. Layden can probably answer that. Cause I believe, I think one of his clients may own property on both sides, but I do believe there are property owners on both sides. So how did your client get from the landlocked property downstream? So we get to the landlocked permission of those riparian owners to kayak over their property. I don't know that he has explicit permission until he gets to defendants properties, but that's where the problem started. That's where the calls the police happen. And that's where really the, um, conflict arose. So you're, you're, this whole thing is a deck action asking the court to declare what rights, if any, the plaintiffs have, am I correct? Or the defendants? Where are they on this? You're a plaintiff. Yes. No, pardon? The plaintiff plaintiffs, they, they, they, your clients brought the action correction that they have the right as well as owners with riparian rights to traverse that body of water in front of the defendants, right? Yes. Or go through it. Yes. Okay. I'm sorry. How wide is the river? That these parts between various plaintiffs or various defendants? Um, I'm not positive. I believe, I believe it varies a lot. Um, I think at some point the creek does get pretty low to the point where you're not driving a jet ski over it. Um, so I think it varies a lot. Um, I believe both, um, looks like I'm out of time. Justice Rice, did I answer your question regarding, um, okay. Thank you. Thank you. All right. Are there any other questions? No. Uh, Mr. Uh, thank you. Um, uh, good afternoon, honorable justices council. Um, may it please the court, uh, as, as I think, you know, uh, my name is Chad Layton, I represent the defendants and the FLEs in this particular case. And I, and I really think the heart of this case boils down to whether or not, uh, a private property owner, um, should have the right to exclude others from a non-navigable, uh, creek or river, uh, that runs adjacent, uh, to private property. I really do think the specific issue that is presented to this court is a matter of first impression. Is that because it's a creek and not a lake? Yes. Yes. And I, and I, and I think there is an important distinction between a creek and a lake, um, uh, that we touched on, of course, in our brief. Um, but the fact that we're dealing with a creek or, you know, a stream or a river, um, obviously has different physical properties than a lake that are, that are meaningful here that are very meaningful, but I think. Well, um, I think, um, as the Beecham court discussed and the way I view the Beecham case, uh, is really an exception to this general rule of allowing, um, exclusive use to riparian owners, but obviously with a lake, you're dealing with, with a body of water, uh, that has an enclosed perimeter. It's, I mean, not literally round. Um, but certainly, um, you have, uh, a limited number of people who can actually access, um, the body of water in terms of, uh, there's a limited number of, uh, people who actually own lakefront property, but practically speaking as the Beecham court makes clear, and as other cases have made clear going back over a century, there are practical problems trying to divide up a lake as compared to a stream. It just on a lake, it, it frankly doesn't really work. Um, and it would be a mess to try to divide up a lake among property owners, um, but those same, uh, types of practical problems don't exist. In this particular case, um, because we're dealing with, uh, with a creek. Um, and it's, it's a lot easier from a practical perspective to divide up, um, property lines and boundary lines, uh, when you're dealing with a creek. And I think what's important here is looking back at Illinois law that goes back well over a hundred years. Um, really the law does support, uh, in my view, a squarely report, uh, support the conclusion that the trial court reached, um, which was to protect the defendant's private property interests. Um, I do want to point out and really start with a, with a discussion of some important facts and, you know, we used in the briefs, um, the term access property and landlocked property to describe the plaintiff's properties. Um, and I don't want there, I'm assuming this is, this is clear, but just so it's clear on the record, when we talk about, uh, the plaintiff's landlocked property. Uh, the plaintiffs do not need to access or go over any of the defendants portion of the Mazon Creek, uh, in order to access what we've described or named the landlocked property. Um, the plaintiffs can access that, uh, landlocked property from their own property, and if they wanted to, uh, they certainly could, um, return to the access property after spending some time on the Mazon Creek that runs next to the landlocked property. So this is certainly not a situation where the plaintiffs are presented or prevented from accessing any of their own property and, uh, so you're telling me, Mr. Layton, that the plaintiffs are not landlocked on that property downstream from the property they are accessing. Is that correct? Well, I think it's landlocked in the sense that you can't access that property from elsewhere on the land. But the, the distinction that I want to make is that, um, we are, we are, the trial court's decision that protected the defendant's private property here does not, uh, prevent the plaintiffs from accessing their own property. They can still get to their own landlocked property by simply going, going through their, what we've called the access property. So they are not prevented from using their own property. And counsel made an interesting point. Yeah, that, that may be true, but aren't they under your theory going to be trespassing on every landowner till they get to that landlocked property? Well, um, I know they're not parties to this suit, but I mean, we can take judicial notice that this is a trespass almost issue, right? Underneath this, this theory of common law. Well, I do think, um, I do think it is a trespass theory and that's really the theory that we're advancing. Um, and the focus of our case, of course, um, is really preventing access to the river that runs or the Creek rather that runs next to our property. And that's really what, what the focus is. Just factual clarification for me anyway, does your clients own both sides of the creek? No, we don't. Um, but I represented, so you only have a body of water on half of it, right? And I'm sorry, let me, let me clarify what I mean by that is collectively the defendants that I represent, we do own property on both sides of the river, but it's, it's not one person who owns property on both sides. It's, it's a group of defendants. Um, that own the both sides of the river, uh, or excuse me, the, the Creek, uh, at the portion of the Mazon Creek that we're dealing with here. Um, and I did want to respond to one specific point, um, that the plaintiff's counsel raised and he talked about, um, something, something to the effect of filling up their, their, the plaintiffs would fill up their kayaks with fossils. And then it would be too heavy that they really wouldn't be able to go back upstream in their, in their kayaks. And I just want to point out, there's no basis in the record to say that the plaintiffs would be prevented from kayaking upstream, uh, and the trial court, um, already rejected that argument. Uh, there's certainly nothing factually in the record to support this idea. That the plaintiffs would somehow be prevented from kayaking downstream and then back upstream for any reason. So I think the way the record reads is they certainly would be able to do that. And we're not limiting their ability to use, um, use their own property. Uh, and I know this was touched on in the first part of the argument, but it actually is a very important distinction under the case law that the Mazon Creek is in fact, um, non navigable. Um, it's not a water highway for business. It's not open for public use. Um, and really the legal consequence of that is that we're dealing with, um, private property interests here. Uh, I'd like to turn to some of the trial court's findings just briefly that I'd like to highlight. Um, the trial court of course agreed that we are dealing with a non navigable, um, body of water. Uh, the Mazon Creek is not going to accommodate commercial traffic. Um, the trial court concluded that the private ownership of the bed of the Mazon Creek does carry with it this exclusive, and that's an important term that I'm going to talk about in a bit. Uh, but this exclusive ownership of the surface rights of the water, um, that run adjacent to property that is owned by, uh, by the defendants. Uh, the trial court also concluded, um, that simply having the right to have, that is not a superior right, um, to private ownership that the defendants are seeking to protect in this particular case. Um, of course the trial court concluded that the Beecham case did not apply. Just because of the impracticalities of trying to apportion a lake, which, which don't apply to a Creek or a river. Um, and I think at the end of the day, the trial court correctly agreed after having an opportunity to review, um, what I'll describe as a comprehensive body of case law, going back over a hundred years, that the Illinois law does support the protection, um, of private rights in this case. You know, in terms of, um, you know, the trial court's decision, I think some of the key issues, um, the key legal issues that support the trial court's decision really boil down to three, three main points. Um, you know, the first point is Illinois law has long recognized, generally speaking, uh, the concept of protecting private property interests. Um, and this, this interest has extended, um, to protecting private property interests and non navigable bodies of water, including rivers and lakes, uh, excuse me, rivers and streams. Um, and, and I think that's important because the defense is not asking, uh, this honorable court to adopt a radical change in the law or to adopt some new, new right that's never before been recognized the rights that we're seeking to protect here, um, have been recognized in Illinois for a very, very long period of time. Uh, the second point I think that is important to highlight is the fact that because we're dealing with a non navigable body of water, uh, there is no public easement or public right of access, um, generally speaking, uh, along this portion of the Mazon Creek. So again, the law is recognizing the fact that, um, protecting private property interests and circumstances like this is, uh, is important. You know, and finally, you know, we, we cite a whole host of cases in our brief, um, that really go to supporting the conclusion that the trial court reached that the private ownership of a non navigable, navigable body of owners to the exclusive right to the water, uh, in front of their property. And that term exclusive is, is very important. That term is used throughout cases going back over a hundred years. Uh, and in fact, it's actually used in the Beecham case as well. Um, when the court talked about, uh, the common law. So the idea of having these exclusive right has been recognized for a long period of time. Um, and the cases that we talk about, and I think this is important because it addresses something that plaintiff's counsel brought up in their reply brief. Um, but the cases that, that we talk about, certainly the cases that go back many years, um, really advanced this protection for private property owners to keep people from coming on their property, um, to take salt or excuse me, to take ice or to take timber or to fish and things of that nature. And, and in the reply brief, the plaintiff's attorney argued that all those cases really dealt with riparian versus non-riparian owners. And I think there's, there's truth to that, but the problem with that argument advanced in the plaintiff's reply brief is there, there's no exception that is granted to, um, uh, riparian owners. In other words, if you have two riparian owners on a body of water, you have two riparian owners on a Creek. One riparian owner does not have the right to go on another riparian owner's property to fish, um, or to take timber or to take sand or anything. And I realized that's not what the plaintiffs are specifically asking for in this case, but the reason that I bring it up is because there is not any exception in the case law that allows riparian owners, some, some rights of access or use when it comes to, um, the water that runs adjacent to another riparian owner's property. So I think that's really an important point here. What the plaintiffs are asking for, um, really is a judicially created exception that has never been recognized, um, in, in Illinois law when it comes to a Creek or a river, uh, or a stream. So I think at the end, you would agree with me, Mr. Layton, that under your theory, uh, let's say we own opposite each other of this Maison Creek. I could have a surveyor go out and find the middle of that Creek bed, which I have ownership, the ownership of, and I can put, uh, some type of marker to mark off my property, correct? Yes. Yes. I do agree. And I, and if you wandered in beyond that marker to fish, I can, uh, yell trust. Yes, I agree. And I think the point there, um, and I think this is very important and, you know, plaintiffs obviously want to advance the right to, um, uh, the right for recreation, but what we are advancing and what I think is grounded in Illinois law, Illinois law to address your question, I hope is protecting private property rights. Um, and justice, right. You brought up this point earlier about, um, what if we're dealing with somebody who wants to jet ski or we can all imagine the different uses of recreation that somebody might want. And I think that's a really important point to consider because what the plaintiffs are advancing here is an argument that would protect their right to kayak, but what if somebody five miles, 10 miles, um, up the Mazon wants to blare by on a jet ski or wants to bring their family and water ski or things of that nature. You don't even have to use your imagination. The plaintiffs here may decide that they're tired of rowing heavy kayaks. So they want to get a fishing boat with a motor. Yes. Yes, exactly. I have a question for you about how far we need to consider how much we have to consider whether the riparian owner owns to the center of the Creek or owns all the water across the Creek, because in this case, your clients all agree to restrict access and they live on opposite sides of the Creek. So what, if we rule in your favor, we don't have to decide whether they get the width of the Creek or only to the middle is I, I see I'm out of time, but I, I presume you'd like me to answer that question. Um, the answer is the direct answer is yes. Um, that, that is not a specific issue, uh, that would have to be decided by the court today because the defendants collectively own property on both sides of the Mazon Creek that we're dealing with here. So that that specific issue really is, is not before this, this court. And in terms of public policy, this doesn't mean that they can never kayak down that Creek. It just means you have to have a good relationship with your neighbors and get permission. I presume you could contractually work out some sort of an agreement for an easement. Absolutely. Absolutely. But, but the point of course, in my view is that it affords the protection and the protection of private property interests and people who own that property and they can decide to do what they like. What's a privacy interest to some people really like to use their property, you know, peace and quiet, and maybe they like to sunbathe without a lot of clothing on or something, and, you know, they just don't want people passing by. So I think that's the exact privacy interest that we're seeking to protect here. Okay. Thank you. You've answered my question. Mr. Layden, you answered my question about the risks of the Mazon on both sides of your various client's property. Yes, we, I will tell you that is not factually in the record. There, there was not any discovery that was conducted. We, we proceeded to motion hearings before there was any discovery. So like, I don't have a factual answer for you, other than my understanding is that the width does vary. And certainly it would vary as the, the Mazon as the ties, the water level goes up and down. But I don't, I don't, I don't have an answer for that. Thank you. Any other questions? No, no. All right. Thank you, Mr. Layden and Mr. Pollack and everybody. Your, your mic is off. Turn your mic on, Mr. Pollack. Sorry. Can you hear me now? Okay. Um, Justice Wright, you did ask that question, Mr. Layden, about how far you would have to go about determining whether they want to know. It's well-established that, that you own to the middle of the river in case loss. So you wouldn't need to worry about ruling on that. Um, now as far as, uh, Mr. Layden's arguments, one of the things I didn't want to talk about was this kind of idea that the homes could kayak down and kayak back up. It really wasn't developed in the record. There was, uh, a back and forth between the home's trial council and trial court regarding whether that is actually a possibility, because I guess, uh, judge Doherty is an amateur kayaker and suggested he could get back up the river if he needed to. Um, so, uh, the trial attorney did indicate that because of the current and because the kayaks loaded down with fossils, it's not something the homes were physically capable of doing. Now, whether that was an affidavit or anything, but I believe that is the breadth of the record on that issue. Um, Mr. Layden did talk a little bit about how the case law prior to Beecham dealing with a riparian owner's right to exclude people does favor exclusion. Um, and he's correct in saying that a lot of those cases dealt with excluding non-riparian owners from taking stuff from people's property, there's ice, timber, stuff like that, but I disagree that the courts haven't dealt with. The relationship of riparian owners in this situation, because Beecham essentially deals with it. And there aren't any cases in the common law that say, no, a riparian owner doesn't have access. There's just not a case that decides it other than Beecham. So that is why it's a case of first impression and the right, the common law between riparian owners was developed to Mr. Mr. Pollack, would you rephrase that or restate that for me? What's your point you were making? So the only case that really deals with riparian owners and access to water is Beecham. There's no prior cases from like the 1800s where a riparian owner was asking for access for other purposes. Um, so that's really what we're dealing with. And in that case, again, I know it's a lake, but the Supreme court chose to apply the civil law rule and allow access. Um, and it did look into, you know, the rights of recreation, stuff like that. The value of that, a lot of the cases are so old that really recreation wasn't something that came into the court's consideration. It just wasn't a thing back then. People weren't kayaking all over the place in the 1800s. Um, so those issues really weren't developed until Beecham. And I think the fact that Beecham chose to grant more access to private landowners does suggest that in a case like this, where we are dealing with a creek, it is appropriate to grant a limited right of access to other riparian owners, um, again, if, and justice holders, you mentioned that if you do adopt the common law rule, unless the homes get permission of everyone along the route, they're not getting to that landlocked property anymore. So I certainly respect Mr. Layton's arguments regarding private property rights and that Illinois courts and cases do tend to protect that, but we're not asking for a very expansive use. I'm sorry. Go ahead. Justice. Okay. The trial judge's decision in effect seems almost like you granted the constructive easement by necessity, uh, to, to, uh, join those two properties. The necessity easement being the use of the waterway between the landlocked property and their property. I mean, because Mr. Layton's clients are all downstream from landlocked property and the right. Right. Um, I, I would think that it was because those property owners weren't in the suit that maybe that's why he said that it wasn't, isn't the net effective of his really, really constructive, uh, easement by necessity using the waterway. Um, I guess that's the operation of his ruling. I don't know if the other, I don't know if the other landowners came in and tried to challenge it, that they would necessarily fall back on that, but yes, he was making an assumption that there is at least permission, I guess, to go up and down that, that portion of the river. Following up with justice Holdridge's question. We were thinking along the same lines. I'm not sure that necessity plays a role here. Wasn't the property landlocked when they acquired it? This isn't a Creek that has changed its course. And, uh, something that they could access easily is now landlocked. So I'm wondering, why do you think necessity even comes into play? Whether your kayak is heavy and whether you can row upstream or not, why is that relevant? Well, first, I don't know the history of the property. Um, but as far as really necessity, I don't even know that we're really making an argument that it's necessary. We're just saying that the use is reasonable. All right. I understand your argument better. Thank you. Sorry. Um, I got a red light. Any other questions? No, we appreciate the opportunity to pick your minds because we can't ask the briefs questions. And this is an interesting case. So we, I appreciate your indulgence. Well, thank you. All right. Thank you guys for your arguments. We all three of us appreciate your indulgence. I don't, I don't. Sometimes I come off as being harsh and that's not my intention. Um, and we will change this matter under advisement. Get back to the written disposition within a short day. And we'll now recess until three o'clock.